220 So.2d 340 (1969)
Shirley Faye Walker BROCATO
v.
John Paul WALKER.
No. 45208.
Supreme Court of Mississippi.
March 10, 1969.
Fred Witty, Greenwood, for appellant.
Lyon & Crosthwait, Indianola, for appellee.
SMITH, Justice.
On May 9, 1966, appellant, Shirley Faye Walker (Brocato) brought suit for divorce against her then husband, appellee, John Paul Walker, in the Chancery Court of Sunflower County. In her bill she also sought custody of Shannon Loyd Walker, a child born to the parties on April 9, 1965.
The court heard the case on October 4, 1966, and entered a final decree granting a *341 divorce to appellant upon the ground of habitual cruel and inhuman treatment. Permanent custody of Shannon Loyd Walker was awarded to appellant and appellee was directed to pay $50 per month toward the child's support. The decree also provided that appellee should have certain rights of visitation. The court "retained jurisdiction" and ordered that "in the event defendant (appellee here) fails to abide by the requirements of this decree he shall forfeit visitation rights and the right to have the child visit with him as set forth."
There was no appeal from this decree granting appellant a divorce and awarding to her the permanent custody of the child.
Approximately three months later, however, appellee filed in the Chancery Court of Sunflower County a petition in which he alleged that appellant had violated his rights of visitation as allowed in the decree, and asked that she be cited for contempt for so doing. The petition also contained a second charge, couched entirely in general terms, to the effect that since entry of the original decree conditions surrounding the child and the parties to the suit had materially changed, and that such changed conditions rendered it "necessary and advisable that the provisions for the custody and control of said child be set aside and this Court modify such decree, * * * and such action would be to the best interest of said child. * * *" There followed a prayer that the award of the child's custody to appellant by the former decree be revoked and that its custody be awarded to appellee. There was no statement whatever in the petition of any fact or facts upon which appellee expected to rely as constituting the alleged "changed conditions and circumstances" upon the basis of which he sought modification of the earlier decree.
On January 25, 1967, the chancellor conducted a hearing upon that phase only of the matter which dealt with the charge that appellant was in contempt. At the conclusion of this evidentiary hearing the court entered a decree finally dismissing the petition as to that aspect of the case.
Appellant then demurred to the petition for modification of the original decree. The demurrer was overruled. Appellant moved for a bill of particulars as to what constituted the alleged changes in circumstances and conditions, and this also was overruled. Appellant contends that the trial court erred in overruling the demurrer and in denying her motion for a bill of particulars because of the entire absence of any allegation of fact in the petition constituting a change in circumstances upon which the modification was sought. There appears to be merit in these contentions but we do not reach them as the case must be disposed of upon other grounds.
In July, 1967, the court heard the matter on appellee's petition for modification of the former decree, appellant's answer thereto, and proof.
In an opinion appearing in the record headed "Decision of the Court and Finding of Fact" the chancellor found specifically, as a matter of fact, that both parties were "fit and proper persons to have custody of said child." However, on August 4, 1967, the Court entered a decree drastically modifying the original decree. This latter decree, in substance, directed that:
(1) Custody of the child should be divided between the parties, appellee to have it for four months, from June 1 through October 1, and that appellant have it for eight months, from October 2 through May 31.
(2) The parties should have the child for ten days at alternate Christmases, from December 20 through December 29.
(3) The "support" payments of $50 per month should stop while the child was actually with appellee.
(4) Appellant was required to deliver the child to appellee and to come for him at the various times at which the changes in custody were ordered to occur, so long as appellee should remain a resident of *342 Sunflower County or, in lieu thereof, to pay all necessary expenses of appellee in "so obtaining or relinquishing his said custody."
(5) Appellant was ordered to enter into bond, payable to appellee, in a penalty of $500, conditioned to carry out the terms of the decree.
The arguments of appellant for reversal fall into two main categories. First, no material change in circumstances adversely affecting the child's welfare justifying a modification of the original decree was alleged or proved; and second, the decree entered entirely disregarded the best interests of the child and to carry it into effect would be inimical to its welfare.
In response to these arguments, appellee cites the multitude of cases in which this Court has held that findings of fact by a chancellor, upon conflicting evidence, will not be disturbed on appeal unless the chancellor was manifestly wrong.
In Cassell v. Cassell, 211 Miss. 841, 846, 52 So.2d 918, 921 (1951) this Court held that in cases involving custody of minor children "we sit as chancellors" and are not bound by the rule which requires affirmance of the decree of a trial court where the evidence is conflicting or where such decree is sustained by substantial evidence.
* * * "A decree fixing the custody of a child is, however, final on the conditions then existing and should not be changed afterward unless on altered conditions since the decree * * * and then only for the welfare of the child." (Emphasis added).
In the case at bar, the facts in evidence material to the issue are largely without dispute.
Following the divorce, appellant had remarried. At the time of the hearing, she and her husband were living in San Antonio, Texas, where he was employed. They had established their own home there and his earnings had been found to be sufficient to allow her to discontinue working so that she might devote all of her time to this child and another child which had been born of her present marriage.
Although the petition for modification said nothing about it, (it was filed before appellant moved to Texas and was not amended), the chancellor placed great emphasis upon the fact that she and her husband had moved to Texas as his reason for modifying the former decree. Other than his comments upon this "change," he noted that appellant had not attended the hearing (she had asked for a continuance) and disparaged the grounds she had assigned for not doing so. He also adverted to the fact that on several occasions (possibly three or four) she had not complied fully with the former decree as to appellee's visitation rights. There was neither an allegation in the petition nor any finding by the chancellor that the child had been abused or neglected or subjected to immoral influences.
Appellee himself, upon being questioned as to what changes in circumstances he considered had occurred since the original decree, replied, "Well, sir, she has broken the court order."
The record shows without dispute that the present husband of appellant went to San Antonio, where he had relatives living, to seek employment. Within three days after he had arrived there he was employed at a salary sufficient to support his family, which included appellant, his own baby and the child born to the parties to this suit. Thereafter, appellant was able to devote her entire time to her home and family.
Appellee testified that his present wife, whom he had married on the night before the hearing, was a young waitress, 17 years old, who intended to quit work. Although she indicated that she would be glad to look after this child, she said that her experience with children had been limited to baby sitting with her younger *343 brothers and sisters. Appellee proposed to live in a trailer parked in the yard of his parents' home. His mother testified that she would "employ a maid" to take care of the child as she herself was working.
We think it is a fact which must be recognized that husbands and wives who are divorced from each other must continue to live and move and have their being in this world. Their needs and problems, material, spiritual and moral, continue to be the same as those of others. The divorce effectively ends the marriage but there is no case known to the law in Mississippi where the aggrieved party may not remarry. Upon remarriage, the wife's place is at her husband's side. The place for her baby is with its mother, in the absence of the most compelling reasons that it should be elsewhere. In this case appellant is a young mother with two babies, whose present husband provides a home and support for his predecessor's child as if it were his own. He has made it possible for the young mother to discontinue work and to devote herself to the rearing of her children. In order to do this it was necessary that he seek employment and earn money. This had necessitated his removal to San Antonio, Texas, some 600 miles from appellee's home in Sunflower County. No proof is needed to establish that the $50 per month contributed by appellee as child support is not a munificent sum, and must be considered hardly adequate to provide the bare essentials for this child.
The final decree of October 4, 1966, awarding permanent custody of the child to appellant is res judicata. As to that matter, it may not be disregarded or lightly altered. Only a subsequent substantial change in conditions would warrant its modification, and only then if such change materially affects the child's welfare adversely. Earwood v. Cowart, 232 Miss. 760, 100 So.2d 601 (1958). In Nowell v. Nowell, 250 Miss. 805, 810, 168 So.2d 301, 303 (1964) this Court said:
The chancellor found that Mrs. Nowell was fit to have her custody, and could supply a proper home. In the absence of exceptional circumstances warranting departure from the rule, it is not to the best interest of a young child that it be shifted alternately from parent to parent. (Emphasis added).
Accordingly, that part of the decree of the chancery court shifting custody between the two parents is reversed, and judgment is rendered here awarding full custody to appellant, the mother, subject to the right of reasonable visitation of the child by her father.
To the same effect was the decision of this Court in Turner v. Turner, 93 Miss. 167, 168, 46 So. 413 (1908) where it was said:
On the facts in this record, concerning which we do not care to go into detail, it is sufficient to say that we cannot concur in the decree of the learned chancellor in dividing the custody of this boy, less than two years old when this decree was entered, between his mother and his father. No child of that age should have his custody thus alternatively shifted, especially where the mother is living and a competent person to care for the child.
The undisputed facts in the record have led us to the conclusion that the chancellor was in error in modifying the former decree. To warrant modification there must have been a substantial change in conditions and circumstances since entry of the decree sought to be modified. Moreover, there must be a finding upon evidence, capable of supporting it, that such change materially affects the child's welfare adversely. Here the record does not reflect such a change but on the contrary tends to show that conditions surrounding the child have been bettered. The child should not be, and may not be, used as a pawn to prevent appellant from following her husband wherever their mutual fortune may require them to go. As *344 head of the family, the pressures of economic necessity have compelled him, as it does most men, to seek his livelihood wherever he may find suitably remunerating employment in a job for which he is qualified. The adventitious circumstance that he should find it in a city 600 miles from Sunflower County should not be the cause or occasion for denying to this child and its mother the home and support which he provides.
Appellant, a young mother with two babies, is in no position to travel the 600 miles from San Antonio to Sunflower County four times yearly for the convenience of appellee in exercising his "rights" of visitation. Nor is there any sound reason why she should finance this travel. The controlling consideration in all cases involving the custody of children is the welfare of the child. "Rights" of the respective parents must be subordinated to the best interests of the child. Upon the face of it, there can scarcely be any doubt that the plan prescribed in the modifying decree of shuttling this baby back and forth between San Antonio and Sunflower County would be psychologically damaging and no child should be subjected to such an experience.
It is regrettable that there is no entirely happy solution. As in most cases of this kind someone must suffer. But it should never be the child, the innocent victim of events with which he had nothing to do.
While the parties to this suit are the adult parents of the child, the case must be reviewed and decided, in the main, upon considerations of the child's best interests. If the unhappy circumstances of the case compel a choice between the child's welfare and the father's convenience in visiting it, as regrettable as it may be, the former must prevail. The child's welfare is inextricably bound up with that of its mother. The mother must be able to give it a decent home and have sufficient means to take care of its multiplicity of needs, if the child's best interests are to be served. Appellant's husband is now providing all of these things. It can hardly be argued that the $50 monthly "support money" contributed by appellee is adequate for those essential purposes.
We have concluded that there was no substantial change in circumstances adversely affecting the child's welfare which would justify modification of the decree with respect to the award of the child's permanent custody to appellant. The court below was manifestly in error in entering the decree appealed from. That decree is reversed and the award of permanent custody of Shannon Loyd Walker to appellant is reinstated together with the requirement that appellee pay $50 monthly for his support, as provided in the original decree.
In the best interest of the child, for the time being, and until such time as it shall have attained an age when separation from its mother and a visit to the home of its father and stepmother and the considerable travel incident thereto, reasonably may be expected not to have an adverse effect upon the child in its critical formative years, the provisions of the original decree authorizing appellee to remove the child to his home are suspended. When such time shall have arrived the case may be reviewed upon that single question and the trial court shall continue to retain jurisdiction for that purpose. The appellant shall be required to enter into bond, payable to appellee, in a penalty of $500, conditioned to abide by the order of the court then entered respecting said matter. In the meantime, appellee shall have reasonable rights of visitation and may visit the child at such times and under such reasonably convenient circumstances as will not be disruptive of the tranquillity of appellant's home.
Reversed and decree here for appellant.
GILLESPIE, P.J., and RODGERS, BRADY and PATTERSON, JJ., concur.