345 So.2d 610 (1977)
Bytista Noal O'NEAL
v.
Stella Rogers O'Neal WARDEN.
No. 49299.
Supreme Court of Mississippi.
April 27, 1977.
William A. Pate, Gulfport, for appellant.
Parsons & Matthews, Thomas M. Matthews, Jr., Wiggins, for appellee.
Before GILLESPIE, C.J., SMITH and WALKER, JJ., and JONES, Commissioner.
BERT H. JONES, Commissioner for the Court:[1]
Stella Warden petitioned the Chancery Court of Harrison County for modification of a divorce decree which granted custody of two minor children to her former husband, Noal O'Neal. The chancellor, relying partly on a report submitted by the welfare department, found for the petitioner. O'Neal appeals.
The parties to this cause were formerly husband and wife. They were married May 29, 1965. To their marriage was born two children, Carolyn Jeannine O'Neal born November 14, 1965 and Mark Anthony O'Neal born September 11, 1967. The parties separated on November 10, 1968. The appellant filed suit for divorce and custody of the children in the Chancery Court of Harrison County, Mississippi. At the time the bill was filed the oldest child was 3 years of age and the youngest was 14 months of age. The bill for divorce charged the appellee with adultery and also alleged that appellee had deserted the appellant and their children, but sought divorce on the ground of cruel and inhuman treatment. The appellee executed a waiver to the bill and personally approved as to form the decree which granted the appellant a divorce and custody of the children subject to the right of appellee to visit the children at all reasonable *611 times. The divorce decree is dated March 19, 1969.
After the decree the children lived with appellant in his trailer for five and one half years. The appellant was both mother and father to the children. He bathed them, cooked for them, washed and ironed their clothes, took them to Sunday School and Church and supervised their school attendance when they reached school age. The appellant is an iron worker and has to leave for his work at 6:00 a.m. The appellant testified that he awakened the children not earlier than 5:30 a.m., fed them breakfast and got them ready for school. The children customarily caught the school bus in front of the trailer at 6:50 a.m., appellant's hours of employment are from 7:00 a.m. to 3:30 p.m. He testified that he gets home between 4:15 and 4:30 p.m. Appellant has another trailer that is connected to his home trailer by means of a breeze-way. Up until July 1974 his parents lived in the second trailer and looked after the children at such times as appellant was not at home. After his parents moved out a couple named Beverly moved into the adjoining trailer and helped appellant with the children until he became dissatisfied with them. At the time of the trial appellant's uncle and his 79 year old grandmother, who lived close by, were helping him with the children. It is revealed in the briefs of both counsel for appellant and counsel for appellee that subsequent to the trial appellant had married again.
In 1969 appellee married Johnny Finley. Part of the time she and Finley lived in Detroit, Michigan. Finley was a member of a motorcycle gang and appellee toured the country with him for a period of several months. Her marriage to Finley lasted four years. They were separated twice, the last separation being in October 1972. They were divorced in April 1973. In January 1973 while still married to Finley, appellee started to live with a man by the name of Ladner and lived with him for four months. In August 1973 appellee met her present husband, Frank Warden. Frank Warden was married. Appellee started to work in New Orleans as a waitress. Warden visited her in New Orleans and also when she came home to Wiggins, Mississippi on weekends. Appellee testified Warden helped her. In August 1974 Warden obtained a divorce. About the same time appellee quit her job in New Orleans and returned to Wiggins. She and Warden were married September 3, 1974. On September 20, 1974 appellee filed her petition to modify the 1969 decree and grant her custody of the children. In her petition, appellee alleged that at the time of the 1969 divorce she "... was not living a life that was conducive to the rearing of children, and in fact was using alcoholic beverages and running around with people and would have neglected the children had she been awarded the children". She alleged, however, that she had repented and for the past two years she lead a life that would make her a fit and proper mother. On the trial, appellee testified that she and Warden were living in a three bedroom trailer; that she was not working and that she thought she was in a position to spend more time with the children than could the appellant. Appellee admitted that she had no complaint of the manner in which the appellant had taken care of the children. In fact, she stated she thought appellant had done a fantastic job. She testified that the children were with her for 10 days during the 1973 Christmas Holidays and for two weeks during the summer of 1974.
The hearing in the court below was held on December 9, 1974. On January 7, 1975 the court entered a decree in which it found that each of the parties were fit, suitable and proper parties to have the care and custody of the children. The decree directed that the Welfare Department of Stone County should at its leisure and some time before the end of the school year make an investigation of the conditions that would affect the comfort, convenience and custody of the children and report the same to the court in a sealed envelope and in a confidential manner for the use of the court in further determining custody in the matter at a later date. The decree provided that the children should remain with the appellant *612 until the end of the school year subject to the appellee having them each weekend beginning each Friday afternoon when they were dismissed from school and ending with her placing the children back in school on the following Monday morning.
On October 1, 1975, without any further proceedings having been had in the case, the court entered another decree which recited that the court had previously entered a temporary order until a report from the welfare department had been received and recited that the report had been received. The decree then proceeded to find that the paramount custody of the children should be vested in the appellee subject to visitation with the appellant on the second and fourth weekends of each month beginning Friday afternoon after school and ending with the following Sunday at 5:00 p.m. The decree also granted the appellant custody of the children during the summer months when school was not in session, subject to appellee having them on the second and fourth weekends of each month from 4:00 p.m. on Friday to 5:00 p.m. on Sunday. The decree also alternated and divided the custody of the children during the Thanksgiving, Christmas, and other holidays. The appellant was directed to pay appellee $30.00 per week for the support of the children except during the summer months when the children were in his custody.
The decree recites that the facts recited in open court and found and reported by the welfare department showed a material change in circumstances and that it would be to the best interest of the children for their custody to be vested as provided in the decree. From this decree, appellant has appealed to this Court.
Appellant assigns as error that no material changes in facts and circumstances had occurred which would justify modification of the 1969 decree. He also assigns as error the action of the trial court in relying upon the report of the welfare department.
We are of the opinion that each of the errors assigned by the appellant is well taken.
This Court has repeatedly held that when a decree has been entered and has become final which awards custody of a child to one parent that it cannot be materially modified or altered unless subsequent thereto there has been a material change of circumstances and then only after a finding based on substantial evidence that such change of circumstances materially affects the children's welfare adversely. Sistrunk v. Sistrunk, 245 So.2d 845 (Miss. 1971); Sanderson v. Seaney, 224 So.2d 862 (Miss. 1969); Brocato v. Walker, 220 So.2d 340 (Miss. 1969).
We are of the opinion that there are no material changes in the facts and circumstances upon which a material modification of the 1969 decree can be based. Appellee admits that she was not a fit person to have the custody of the children when the 1969 decree was granted, but contends for the two years preceding the date she filed her petition for modification that she had repented. For at least one year of this two year period of repentance, appellee was keeping company with a married man. She married her present husband on September 3, 1974, and filed her petition for modification on September 20, 1974. She contends the fact that she now has a new husband and lives in a three bedroom trailer and does not have to work are sufficient changes to justify modification of the decree. We cannot agree. Based on a consideration of the past record of appellee's instability, the time element is simply too short to say with certainty she has changed her ways. It has been wisely stated that when predicting the probability of behavior of parties there is no more accurate guide than considering their past behavior. Appellee willingly relinquished custody of the children to appellant in 1968 when one child was 3 years of age and the other only 14 months of age. At this time in their lives the children were in desperate need of a good mother's love, attention and care. For five and a half years appellee showed little concern for the children's welfare. During all of that period the appellant was an attentive, loving and devoted *613 father to the children. To now take the primary custody from him and vest it in the mother does not, in our opinion, meet the requirements of simple justice.
We are of the opinion that based on the facts of this record that it was error for the chancellor to base his decree in part on the report of the welfare department. Counsel for appellee contends in his brief that when the testimony in this case was concluded on December 9, 1974 that the chancellor and the attorneys for each party retired to chambers and that it was there agreed that a report from the welfare department would be requested and submitted to the court. No such agreement appears in the record of this case. In our consideration of this case we are confined to the record. The appellee had the burden of proof on the trial of this case in the court below. If she was relying on any such agreement it was her duty to see that it was incorporated into the record and to see that the report was incorporated therein.
Griffith, Mississippi Chancery Practice, Section 675 (2d ed. 1950), at page 744 provides, in part:
An appeal in the supreme court must be considered solely on the record made in the trial. The appellate court is confined to the face of the record in the trial court, and a case cannot be heard on a different record than that made in the court below, duly certified. It cannot accept affidavits, or statements, or even evidence as to any facts not a part of the trial record and not before the trial court; ...
We do not say that in no case may the court in a case such as this under given circumstances request and rely upon a report of a welfare department. We simply say under the facts of this case it was error for the court to rely upon the report.
For the reasons assigned above this case should be reversed and the former decree awarding custody of the children to appellant reinstated in its entirety.
REVERSED AND RENDERED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.
NOTES
[1] pursuant to Chapter 430, Laws of 1976. The above opinion is adopted as the opinion of the Court.